UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MAKENE JACOBS,
    Petitioner,

v.

UNITED STATES OF AMERICA,
    Respondent.

No. 3:07-cv-00044 (SRU)

### RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE

    Makene Jacobs seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. Jacobs is confined at Williamsburg Federal Correctional Institution in Salters, South Carolina. On June 20, 2001, after a ten-day trial, a jury returned a guilty verdict against Jacobs for conspiracy to possess with intent to distribute 1,000 grams or more of heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846. On September 26, 2002, I sentenced him to a mandatory term of life imprisonment. Jacobs appealed on October 1, 2002. On November 2, 2005, the Second Circuit affirmed the judgment of conviction and sentence. *United States v. Herredia*, 153 F. App'x 50, 55 (2d Cir. 2005), *cert. denied*, 546 U.S. 1224 (2006). On January 9, 2007, Jacobs, appearing *pro se*, sought collateral relief by filing this motion, which he and court-appointed counsel have supplemented. For the reasons set forth in this ruling, the motion to vacate, set aside, or correct Jacobs's sentence (doc. # 1) is **GRANTED**.

**I.**  **Background**

    Jacobs was part of a large drug trafficking ring in the Bridgeport, Connecticut area. On June 20, 2001, a federal grand jury returned a Third Superseding Indictment against numerous defendants, Count Twelve of which charged Jacobs with unlawfully conspiring to possess with

1

intent to distribute 1,000 grams or more of heroin.  The jury rendered a verdict of guilty on that charge and, on September 26, 2002, I sentenced Jacobs to a lifetime term of imprisonment.

Jacobs appealed on October 1, 2002, challenging his conviction and sentence, alleging ineffective assistance of counsel, questioning the fairness of his trial, and challenging the constitutionality of the sentence as well as the court's consideration of his prior convictions in assessing a life sentence under 21 U.S.C. § 851.  He also moved for a remand to this court for an evidentiary hearing to supplement the record on whether he was denied effective assistance of counsel because, among other things, his trial counsel failed to properly investigate and move to suppress $2,407 seized from him and introduced into evidence at trial.  On April 30, 2003, the Second Circuit granted his motion.  This court conducted a hearing, and in Amended Supplemental Findings denied Jacob's ineffective assistance of counsel claims.  The Second Circuit affirmed the judgment of conviction and sentence on November 2, 2005.  *Herredia*, 153 F. App'x at 55.

On January 9, 2007, Jacobs, appearing *pro se*, filed a habeas petition in which he again claimed ineffective assistance of counsel, but with respect to a plea offer and counsel's alleged failures in attempting to establish that his prior convictions were not "prior" and were part of the instant offense of conviction.  On January 27, 2010, I appointed Jeffrey Kestenband to represent Jacobs.  Kestenband subsequently filed a motion to supplement Jacobs's claim, alleging that trial counsel had failed to discuss any plea offers with Jacobs and had not fully discussed the consequences of going to trial.  Jacobs claimed that he would not have gone to trial had he known about the plea offer.  An evidentiary hearing took place on March 22, 2010 and, after that hearing, Jacobs filed a supplemental memorandum of law in support of his habeas petition, raised an ineffective assistance of counsel claim relating to the failure of his trial counsel to

challenge his underlying convictions, and argued that I should apply the Second Circuit's decision in *United States v. Savage*, 542 F.3d 959 (2d Cir. 2008), retroactively and, therefore, vacate the section 851 sentencing enhancement. With respect to his prior claims of ineffective assistance, Jacobs dropped the claims that counsel was ineffective for failing to submit evidence establishing that his prior cocaine conviction was part of the instant heroin conspiracy, and that counsel was ineffective for failing to seek a hearing under 21 U.S.C. § 851(c) prior to trial in order to contest the validity of his prior convictions.

## II.     Standard of Review

"A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In general, petitioners who have failed to present a claim on direct appeal may not raise that claim on collateral review absent a showing of cause and prejudice. *Yick Man Mui v. United States*, 614 F.3d 50, 54 (2d Cir. 2010). A petitioner may raise a claim of ineffective assistance of counsel, however, even if that claim was not raised previously at trial or on appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Yick Man Mui*, 614 F.3d at 57. The main thrust of Jacobs's claims is that his trial counsel and counsel at sentencing provided ineffective assistance. Those claims are properly before the court and will be decided according to the familiar Sixth Amendment standard governing claims of ineffective assistance of counsel.

To succeed on his ineffective assistance claims, Jacobs must demonstrate (1) that his counsel's performance "fell below an objective standard of reasonableness," and (2) "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-91

(1984). The mere possibility that a particular deficiency might have prejudiced the defendant is not enough. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

### III. Discussion

Jacobs brings three claims against his trial counsel for ineffective assistance of counsel at the pre-trial phase: (1) that counsel failed to inform Jacobs about the government's plea offer, (2) that counsel was ineffective because he failed to adequately advise Jacobs whether to accept or reject the offer, (3) and that counsel was ineffective because he did not inform Jacobs of the inculpating nature of his defense and trial testimony that he was an independent cocaine distributor. Jacobs brings one claim of ineffective assistance of counsel against his attorney at sentencing, Luis Rojas, arguing that Rojas was ineffective when he failed to object to the Government's failure to meet its burden of establishing that Jacobs's prior convictions qualified as felony drug offenses under a modified categorical approach analysis. Finally Jacobs argues that he should be resentenced in light of the Supreme Court's ruling in *Savage*.

A. <u>Prior Appeal</u>

On September 26, 2002, I sentenced Jacobs to a mandatory term of life imprisonment pursuant to 21 U.S.C. § 851. On direct appeal of his conviction and sentence, Jacobs alleged: (1) ineffective assistance of counsel; (2) lack of fairness at trial; and (3) unconstitutional sentence. Jacobs's ineffective assistance claim addressed counsel's alleged failure to suppress evidence produced at trial. On remand, I conducted a hearing and denied Jacobs's ineffective assistance

claim. (doc. # 1231). The Second Circuit affirmed Jacobs's conviction and sentence. *See United States v. Herredia*, 153 F. App'x. 50 (2d Cir. 2005), *cert. denied*, 546 U.S. 1224 (2006).

Jacobs now raises, for the second time, claims of ineffective assistance of counsel. The government argues that Jacobs is barred from bringing this Section 2255 claim because the issues Jacobs raises here are the same or similar to claims already resolved on direct appeal. A defendant cannot collaterally attack, in a section 2255 motion, issues that were raised and considered on direct appeal. *United States v. Perez*, 129 F.3d 255, 260 (2d Cir. 1997). A defendant, however, can raise claims of ineffective assistance of counsel that were not raised on appeal. *Id.* at 261. Jacobs argues that the issues raised in the instant petition are not identical to those raised on direct appeal.

On direct appeal, Jacobs's ineffective assistance claim was limited to counsel's alleged failure to suppress evidence at trial. Here, Jacobs makes several claims with respect to issues not raised before: (1) the adequacy of advice with respect to the government's plea offer; (2) failure to object to the court's reliance on certain police reports with respect to convictions listed in the government's section 851 information; (3) ineffective assistance of counsel with respect to Jacobs's trial strategy; and (4) the retroactive application of *Savage* and vacatur of the section 851 enhancement. Accordingly, Jacobs's claims of ineffective assistance of counsel are not barred insofar as they raise issues that have not already been resolved on direct appeal, which includes the claims listed above.

B. Ineffective Assistance of Counsel

Jacobs asserts that his trial counsel failed to inform him of the government's plea offer. For this claim to succeed, Jacobs must show that his attorney's performance was objectively unreasonable and that he suffered prejudice as a result. *See Strickland*, 466 U.S. at 668. It is

well-established that counsel must always communicate to the defendant the terms of any plea bargain offered by the prosecution. *Cullen v. United States*, 194 F.3d 401, 404 (2d Cir. 1999). Otherwise "[a]defendant suffers a Sixth Amendment injury" because "[d]efense counsel have a constitutional duty to give their clients professional advice on the crucial decision of whether to accept a plea offer from the government." *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003). The Supreme Court has addressed the question whether the constitutional right to effective assistance of counsel extends to the negotiation and consideration of plea offers that lapse or are rejected. *Missouri v. Frye*, --- U.S.---, 132 S. Ct. 1399 (2012). In *Frye*, the petitioner was offered a plea bargain with an expiration date. The petitioner's attorney did not advise him that the offer had been made, or that the offer had expired, and the petitioner eventually took a later plea offer. In that case, the challenge of ineffective assistance of counsel was not to "[t]he advice pertaining to the plea that was accepted but rather to the course of legal representation that preceded it with respect to other potential pleas and plea offers." *Id.* at 1406. The Supreme Court declined to adopt the government's contention that, because the prosecution has little or no capacity to intervene in discussions between client and defense counsel, it is unfair to subject the government to the inadequacies of defense counsel. The Supreme Court held, in light of the practical reality that the overwhelming majority of federal and state criminal proceedings end in a guilty plea instead of a trial, that defense counsel has the duty to communicate formal offers from the prosecution to agree to a plea on terms and conditions that may be favorable to the accused. *Id.* at 1408. This court must therefore determine whether defense counsel allowed the January 25, 2001 plea offer to expire without advising Jacobs about it or allowing him to consider it. *Id.*

The case before me is similar to *Frye* except that, in that case, the petitioner was not informed of the existence of a plea offer before its expiration, subsequently received advice, and took a later plea offer. Here, Jacobs alleges that his trial counsel did not inform him of the January 25, 2001 proposed plea and cooperation agreement, Aff. of Makene Jacobs (doc. # 46), and presents evidence showing that his counsel attempted to persuade Jacobs to plead guilty to a later plea offer, *see infra*. Jacobs testified at the evidentiary hearing that prior to trial he had not seen or known about the existence of the government's plea offer. Evid. Hr'g Tr. at 26 (doc. # 35). The existence of the plea offer from the government is not disputed. *See* Letters from Govt. to M. Jacobs, attached as Petr.'s Exs. 5-7 to Evid. Hr'g Tr.

The government has failed to provide any affirmative evidence to support a determination that Jacobs's trial counsel notified Jacobs of the specific terms or even existence of the January plea offer before its expiration. The only evidence the government presents to support an inference that Jacobs was notified of the existence of the plea offer is trial counsel's testimony at the evidentiary hearing that,

> I think early on in the case there was an initial offer from the government that related to that the government wouldn't file life papers and that we discussed what the ramifications were at that time if he entered a plea of guilty.

Evid. Hr'g Tr. at 64:6-10. The testimony regarding discussion of a plea offer is vague concerning the timing of the discussions themselves and murky about whether Jacobs's trial counsel was discussing the January plea offer, the November plea offer, or pleading guilty generally. The government did not present testimony at the evidentiary hearing to clarify whether trial counsel informed Jacobs of the January plea offer specifically. When asked about the nature of the correspondences between counsel and Jacobs at the time the government disclosed the plea offer, Jacobs's trial counsel stated,

7

> During the early period of my representation, which would have been from December on through at least March and/or April, Mr. Jacobs called my office on numerous occasions . . . I would imagine that between December and April of 2001 that I had at least a dozen substantive conversations with Mr. Jacobs on the telephone about specific matters of this case . . . [The conversations] would include bond, it [sic] would include the guidelines, it [sic] would include discovery and the lack of discovery . . . . But we had discussions about the case and at least half of those discussions were the fact that Mr. Jacobs, either through research or through talking to other inmates, came up with certain avenues that he wished me to pursue, so we discussed those avenues.

Evid. Hr'g Tr. at 56:21-57:19.

The government's exhibits cast doubt that trial counsel formally discussed the January plea offer with Jacobs before it expired. The government introduced as evidence several letters written by counsel to Jacobs from the period of December 8, 2000 to September 14, 2001. In an internal memorandum written by trial counsel dated April 5, 2001, Jacobs's counsel stated that for the "third or fourth time" he "explained about the grand jury, the government's protective order, the fact of the videotapes and informant/cooperator testimony, and the fact that he could not have been arrested unless the grand jury heard evidence, voted an indictment, and the Court issued an arrest warrant." April 5, 2001 Memorandum, attached as Govt.'s Ex. 10A to Evid. Hr'g Tr. There is no mention of a plea offer until May 9, 2001, well after the February 5th expiration of the January plea offer. *See* May 9th Letter, attached as Govt.'s Ex. 10B to Evid. Hr'g Tr.

The fact that Jacobs's counsel documented his frequent discussions concerning important matters of Jacobs's criminal proceeding—the protective order and its impact on discovery, grand jury indictment, informant/cooperator testimony, bond, sentencing guidelines, and specific evidence—but failed to include detailed discussion of a formal plea offer, strongly suggests that this vital discussion did not occur. "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the

8

Case 3:07-cv-00044-SRU   Document 73   Filed 04/01/14   Page 9 of 15

plea bargain process, responsibilities that must be met to render adequate assistance of counsel . . . ." *Frye*, 132 S. Ct. at 1407. Jacobs's counsel's failure to distinctly recall or formally document "ordinarily the most important single decision in any criminal case," *Boria v. Keane*, 99 F.3d 492, 496-97 (2d Cir. 1996), is strong evidence that the representation of Jacobs at the time of the plea offer fell outside the range of reasonable professional assistance.

In addition to trial counsel's accounts of his discussions with Jacobs before the January plea offer had lapsed, Jacobs's statements made after the lapse of the plea offer indicate that Jacobs's counsel never informed Jacobs specifically of the existence of the January plea offer, even after its expiration. Jacobs's correspondence to the government in the pre-trial stage supports an inference that he was not aware the Government had made a formal plea offer on January 25, 2001. In the April 4, 2001 letter from Jacobs to Assistant U.S. Attorney Hernandez, Jacobs presents an optimistic offer to work for the government to provide support for the Government's prosecution of other major drug dealers in the New Haven and Bridgeport area. April 4, 2001 Letter from M. Jacobs to A. Hernandez, attached as Pet'r's Ex. 1 to Evid. Hr'g Tr. This position taken by Jacobs, unrealistic at best when viewed in light of the government's January plea offer and proposed cooperation agreement, supports an inference that, if he had been informed of the terms of the January plea offer, he would have known that the government would not agree to a cooperation agreement without Jacobs serving a significant prison term. Furthermore, Jacobs would have known that he would be required to enter a guilty plea before the government considered entering into a cooperation agreement. Plea Offer Memo, attached as Pet'r's Ex. 5 to Evid. Hr'g Tr. ("[I]f your client is interested in pleading guilty and cooperating after February 5, we must insist that your client enter a guilty plea before the government considers entering into a cooperation agreement."). Although the government maintains that

9

Jacobs was unwilling to cooperate with it unless he received no prison time, this does not support an inference that Jacobs knew about the January 25, 2001 plea offer and rejected it; rather it suggests that due to the ineffective assistance of counsel Jacobs was completely uninformed of the government's offer and the stringent requirements of a cooperation agreement.  Jacobs's statement made at the evidentiary hearing supports a finding that he was uninformed that a plea offer had been conveyed by the government in January 2001 when writing the April 4th letter. In response to the details of the plea offer calling for a "substantial sentence," Jacobs stated, "the information I would have provided, I don't see why I wouldn't [sic] have got a life sentence . . . I felt, I still felt like back then, I would have went through it, even being faced with all of this [prison time].  So it wouldn't have bothered me at all." Evid. Hr'g Tr. at 27:12-17.

     Jacobs's letter to the court seeking to remove trial counsel from the case does call into question Jacobs's assertion that he had not been informed of the January 25, 2001 plea offer until 2010.  Jacobs stated, "[counsel's] only intentions [sic] of resolving this matter is by a Plea Agreement, in which I have no intentions on doing."  May 10, 2001 Letter of M. Jacobs to Court, attached as Govt.'s Ex. 1 to Evid. Hr'g Tr.  This statement certainly substantiates the position that Jacobs's trial counsel effectively advocated that Jacobs should plead guilty and not go to trial in the face of significant evidence and cooperating witnesses against him.  It does not, however, provide any specific proof that Jacobs had been advised of the plea offer before its expiration on February 5th, the essential question in determining ineffective assistance of counsel here.  For the reasons explained above, I find that Jacobs's counsel failed to inform Jacobs of the existence of the January 25, 2001 plea offer and proposed cooperation agreement before their expiration and that such failure fell below an objective standard of reasonableness.

To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, a defendant must demonstrate a reasonable probability that he would have accepted the earlier plea offer had he been afforded effective assistance of counsel.  *Id*. at 1409; *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).  Here, as in *Lafler*, having to stand trial is the prejudice alleged.  *Lafler v. Cooper*, --- U.S. ---, 132 S. Ct. 1376, 1383 (2012).

The Second Circuit adopted a test in *United States v. Gordon*, 156 F.3d 376 (2d Cir. 1998), to which the Supreme Court in *Lafler* conformed its ruling, for determining what evidence a court may consider when deciding whether a defendant would have accepted an earlier plea offer instead of going to trial.  Such "reasonable probability" is shown where (1) the petitioner asserts that he would have accepted the plea offer and (2) there is a significant disparity between the sentence that would have been served if the plea offer had been accepted and the sentence the petitioner is now serving.  *Gordon*, 156 F.3d at 380.

In the present case, Jacobs's statements, found in letters to the Assistant U.S. Attorney before and after trial, in his affidavits, and at the evidentiary hearing, combined with a significant disparity in the sentence he could have potentially received through the January plea agreement and the sentence he received following trial, establish a reasonable probability that Jacobs would have taken the January plea offer if he had been informed of it before its expiration.

In addition to showing a reasonable probability that Jacobs would have accepted the plea offer if it had been communicated to him, Jacobs must also "demonstrate with a reasonable probability the plea would have been entered without the prosecution cancelling it or the trial court refusing it."  *Id*. at 1410.  No evidence has been presented by the government to suggest

that it would not have entered into a plea agreement consistent with the terms and conditions set forth in the January plea offer.

Finally, in a situation where a defendant forgoes an initial plea offer, "it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." In this case, if Jacobs had pled guilty according to the terms of the government's January plea offer, he would have been sentenced under a mandatory guideline range of 360 months to life imprisonment. *See* January 25, 2001 Plea Offer, attached as Govt.'s Ex. 5 to Evid. Hr'g Tr.[1] Jacobs was sentenced to mandatory life imprisonment.

The Supreme Court has announced that, where there has been a finding of ineffective assistance of counsel in a section 2255 proceeding, the remedy "should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. *United States v. Morrison*, 449 U.S. 361, 364 (1981). The Supreme Court in *Lafler* identified two forms of specific injuries suffered by defendants who decline a plea offer as a result of ineffective assistance of counsel and then receive a greater sentence after trial. In some cases, the sole advantage a defendant would have received if he had taken the plea offer that was

---

[1] The government calculated Jacobs's guidelines range as follows: "[Jacobs's] base offense level under U.S.S.G. § 2D1.1(c)(4) is 38. Because firearms were used in connection with the offense of conviction, two (2) levels were added pursuant to U.S.S.G. §2D1.1(b)(1). Here, [Jacobs] was the manager and supervisor of criminal activity which involved five or more participants and which was otherwise extensive. Thus three (3) levels are added pursuant to U.S.S.G. § 3B1.1(a). This results in a total Adjusted Offense Level of 43. The government is prepared to recommend a three level downward adjustment for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. [The government] calculate[s] that [Jacobs] is a Career Offender pursuant to U.S.S.G. § 4B1.1(a). The intersection of offense level 40 and a Criminal History Category VI yields an imprisonment range of 360 months to life." Plea Offer Memo, attached as Petr's Ex. 5 to Evid. Hr'g Tr..

either declined or not presented due to ineffective assistance of counsel is a lesser sentence. *Lafler*, 132 S. Ct. at 1389. This exists when the charges that would have been admitted as part of the plea bargain are the same as the charges the defendant was convicted of after trial. *Id*. In such a situation, the proper remedy may be to conduct an evidentiary hearing to determine whether the defendant has shown a reasonable probability that but for counsel's errors he would have accepted the plea. If the showing is made, "the court may exercise discretion in determining whether the defendant should receive the term of imprisonment the government offered in the plea, the sentence he received at trial, or something in between." *Id*.[2]

In the present case, Jacobs was convicted at trial of the same crime to which he could have pleaded guilty in the January plea offer, the charge of Conspiracy to Possess with Intent to Distribute and Distribution of Heroin, in violation of Title 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. The government in its plea offer calculated Jacobs's base offense level under U.S.S.G. § 2D1.1(c)(4) as 38, increased by 3 levels under section 3B1.1 for Jacobs's role as a manager or supervisor, and a Criminal History Category VI. As a result of an Offense Level determined at sentencing to be 43, under the mandatory Guidelines in effect at the time, Jacobs was required to be sentenced to life imprisonment. *See* U.S.S.G. § 5A.

Although the government calculated Jacobs's offense level to be 43 in its plea agreement offer, the government was willing to grant a downward adjustment of three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1. If Jacobs had taken the January plea offer, he

---

[2] The choice of remedy is more complex where a proffered plea agreement would have allowed the defendant to plead guilty to different charges than those for which he was found guilty at trial. The correct remedy in such a case would be to reoffer the plea agreement, and then determine whether to vacate the convictions and resentence the petitioner pursuant to the plea agreement, to vacate only some of the convictions and resentence the petitioner accordingly, or to leave the convictions and sentence from trial undisturbed.

would have been required to cooperate fully with the government by disclosing his and others' participation in criminal activities. If the government determined that the defendant provided "substantial assistance in the investigation or prosecution of another person who has committed an offense" the government would have filed a motion pursuant to section 5K1.1 of the U.S. Sentencing Guidelines and 18 U.S.C. § 3553(e). As a result of the acceptance of responsibility and agreement to cooperate, Jacobs would have faced a mandatory Guideline sentence in the range of 360 months to life, or a lesser sentence based on the success of his cooperation.

The Supreme Court has instructed trial courts to consider several factors when implementing a remedy for ineffective assistance of counsel. The Supreme Court notes,

> First, a court may take account of a defendant's earlier expressed willingness, or unwillingness, to accept responsibility for his or her actions. Second, it is not necessary here to decide as a constitutional rule that a judge is required to . . . disregard . . . any information concerning the crime that was discovered after the plea offer was made. The time continuum makes it difficult to restore the defendant and the prosecution to the precise positions they occupied prior to rejection of the plea offer, but the baseline can be consulted in a finding a remedy that does not require the prosecution to incur the expense of conducting a new trial.

*Lafler*, 132 S. Ct. at 1389.

Guided by the Supreme Court's analysis but mindful that "[p]rinciples elaborated over time in decisions of state and federal courts, and in statutes and rules, will serve to give more complete guidance as to the factors that should bear upon the exercise of the judge's discretion," *id.,* I vacate the sentence Jacobs received after trial and order that he be resentenced. I need not consider Jacobs's additional claims in his amended section 2255 motion.

**IV.   Conclusion**

For the foregoing reasons, Jacobs's 28 U.S.C. § 2255 motion to vacate, set aside, or correct his sentence (doc. # 1) is **GRANTED**. Jacobs is hereby ordered to appear for

resentencing at a time and date to be scheduled with the input of counsel.

It is so ordered.

Dated at Bridgeport, Connecticut, this 1st day of April 2014.


                                               /s/ Stefan R. Underhill
                                               Stefan R. Underhill
                                               United States District Judge